## STONE *et al.* v. CITY OF SAPULPA *et al.*

No. 2038.    Opinion Filed May 9, 1911.

(115 Pac. 1113.)

**MUNICIPAL CORPORATIONS—Sewer District—Enlargement.** The power of a municipal corporation under section 986 of Compiled Laws of Oklahoma, 1909, to enlarge and change sewer districts formerly established by such corporation is limited in the exercise thereof to a time previous to the construction of the sewer in the district attempted to be enlarged; and a city council of a city of the first class is without power, after the sewer district has been established and a sewer constructed therein, to enlarge by ordinance said district and construct in the territory added a district sewer, and assess the cost thereof against the property in the enlarged district, including the property in the territory of the old district as well as the property in the added new territory.

(Syllabus by the Court.) .

*Error from District Court, Creek County; W. L. Barnum, Judge.*

Action by W. B. Stone and others against the City of Sapulpa and M. Summers and F. R. Stone, doing business under the firm name of Summers & Stone. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

*Pryor & Lively,* for plaintiffs in error.
*Geo. S. Ramsey* and *C. L. Thomas,* for defendants in error.

HAYES, J. · This is a proceeding for an injunction. Plaintiffs in error here were plaintiffs below, and defendants in error were defendants. The trial was to the court upon an agreed statements of facts, and it resulted in a judgment dismissing plaintiffs' petition. The city of Sapulpa is a city of the first class. On the 8th day of February, 1909, its council duly passed an ordinance numbered 168, creating storm sewer district No. 1, and authorized the construction of a line of sewer in said district. The contract for the sewer was let and the sewer was constructed. The contractor was paid in assessment warrants, payable in one, two, and three years, as provided by statute. It was afterwards.

ascertained by the authorities of the city that the sewer constructed in this district was inadequate for the reason that it had no sufficient outlet, and the waters that accumulated therein were discharged upon the property adjoining the mouth of the sewer. To remedy this situation, the city council on the 6th day of December, 1909, passed an ordinance numbered 213, by which they undertake to enlarge sewer district No. 1 and provide for the construction of an additional storm sewer in the district as enlarged. The additional sewer to be constructed will lie wholly in the territory added by the recent ordinance to the old district, and is intended to serve a double purpose: First, to afford an outlet to the sewer formally constructed in the old district; and, second, to drain the storm sewer waters from the additional territory added by the recent ordinance to the old district. The city clerk, proceeding under ordinance No. 213, advertised for bids for the construction of the additional sewer, and the contract had been duly awarded by the council to defendants in error, who, at the commencement of this suit, had begun the construction of the sewer. Plaintiffs are property holders and taxpayers in the original district No. 1, as well as in the district as enlarged by ordinance No. 213; and this action was instituted to enjoin defendants from proceeding to construct the sewer and to have declared null and void all the proceedings of the city council looking to the enlargement of the district and the construction of the additional sewer and the levying of any of the cost thereof upon plaintiffs' property. Their contentions are presented in their brief under four propositions; but it will be necessary to notice only one of them. The statute defining the authority of municipal corporations to construct storm sewers and providing a procedure for the exercise of such authority is to be found in sections 984 to 993, inclusive, of Compiled Laws of Oklahoma, 1909.

Section 984 grants to every municipal corporation of a population not less than 1,000 persons power to cause a general sewer

system to be established, which shall be composed of three classes of sewers, to wit. public, district, and private sewers.

Section 986 in part reads as follows:

"District sewers shall be established within the limits of the districts, to be prescribed by ordinance, and shall connect with public sewers or other district sewers, or with the natural course of drainage, as each case may be. *Such districts may be subdivided, enlarged or changed by ordinance at any time previous to the construction of the sewer therein,* and more than one district sewer may be laid in a sewer district if deemed necessary by the council for sanitary or other purposes. The city shall cause sewers to be constructed in each district whenever a majority of the property holders, residents therein, shall petition therefor, and said sewers shall be of such dimensions and materials as may be prescribed by ordinance, and may be changed, enlarged or extended, and shall have all the necessary laterals, inlets, catchbasins, manholes and other appurtenances: Provided * * *."

Section .987 pertains to the construction of private sewers; and section 988 provides when the city council may construct sewers upon private property, and exercise the power to condemn property for such purpose.

Section 989 regulates how the contract for construction shall be executed; and by section 990, it is provided that, "as soon as any district sewer shall have been completed, the city engineer or other officer having charge of the work shall compute the whole cost thereof, which shall also include all other expenses incurred by the city in addition to the contract price of the work, and shall apportion the same against all the lots or pieces of ground in such district exclusive of improvements, in proportion to the area of the whole district, exclusive of the public highways, and such officer shall report the same to the mayor and council, and the mayor and councilmen shall thereupon levy and assess a special tax, by ordinance, against each lot, or piece of ground within the district. * * *" The remaining part of this section provides for the issuance of tax warrants and for annual collection of the tax for the payment of the warrants.

The principal question which this proceeding presents is

whether the foregoing italicized words in section 986, to wit, "such district may be subdivided, enlarged or changed by ordinance at any time previous to the construction of the sewer therein," limit the power of the city council to enlarge a district to a time previous to the construction of a sewer in the district, and prohibits such enlargement after the construction of such sewer.

Defendants in error contend that this is an affirmative statute, and invoke the rule of construction that affirmative statutes are generally accumulative, and do not destroy existing rights or powers; but we do not think that this rule of construction has any application to the statute under consideration. Municipal corporations have no common-law powers.

"They are governments of granted and enumerated powers acting by delegated authority. The character of the general law which creates them is their constitution, in which they must be able to show authority for the acts they assume to perform. While state Legislatures may exercise such powers of government coming within a proper designation of legislative powers, as are not expressly or impliedly prohibited, the legislative body of a municipal corporation can exercise those powers only which are expressly or impliedly conferred by charter or the general law." (*In re Gribben,* 5 Okla. 379, 47 Pac. 1074.)

Power in cities of the first class to create sewer districts, to construct sewers therein, and assess the cost of same against the property lying within the district, did not exist either at common law or under any existing statute prior to the enactment of the statute involved.

Section 731 of Comp. Laws of Okla. 1909, authorizes the city council to levy a tax of not exceeding 5 mills within any one year upon all taxable property of a city for the purpose of constructing storm sewers and outlets in connection therewith. if this statute was not affected by the provisions of the Constitution, it does not authorize the laying out of sewer districts and construction of sewers therein by assessing cost of same against property in the district.

Section 986, *supra*, therefore is not and cannot be an affirmative statute or supplementary to any existing law. It and the other sections of the act delegate in the first instance the power to city councils to lay out sewer districts, enlarge and change the same, and to construct sewers therein under the procedure prescribed by the act. In delegating this authority to the city council, the legislative will saw fit to expressly state in the statute when a sewer district may be enlarged or changed; and the rule of construction *expressio unius exclusio alterius* applies; and from the fact that the act grants to the city council authority to exercise the power of enlarging and changing sewer districts at the time named therein, the act implies that it was the legislative intent to negative the exercise of this authority at any other time. "If a thing is limited to be done in a particular form or manner, it excludes every other mode, and affirmative expressions introducing a new rule imply a negative." (Lewis' Sutherland Statutory Construction [2d Ed.] vol. 2, p. 638.)

The act in question delegates a new power to cities of the first class, and prescribes a procedure for the exercise of that power; and it must be deemed exclusive, unless it appears from the provisions of the act that such was not the legislative intent. But, upon an examination of all the provisions of this act, reasons appear why it should have been the legislative intent to limit the power of cities to change these districts to a time before the construction of sewers therein. No discretion is left under the provisions of section 990 in the city council to be exercised in apportioning to the property in these districts the cost of the construction of any district sewer; for, by that section, they are required to apportion it against all the lots or pieces of ground in the district, exclusive of the improvements, in proportion to the area of the district. Section 986 authorizes the city council in constructing such sewers to provide all necessary laterals, inlets, catch-basins, manholes, and other appurtenances. If the construction contended for by defendants in error is to be given this act, then a city council would be authorized by the terms of

the act, after it had laid out a sewer district and a complete system of sewers had been established therein, to enlarge this district by taking in territory above the sewer line constructed instead of below as in this case, and to construct a complete district sewer system in the added territory, thereby imposing upon the old district for the construction of the new sewer the same burden that is imposed upon those who own property in the territory added, although the latter have contributed nothing to the sewers which directly serve the property owners of the old district. In fact, so far as the terms of the act are concerned, under the construction contended for, the first district laid out in a city could, from time to time, be enlarged so as to include all of the city and property owners in the original district upon each enlargement made to their district be compelled to contribute anew to the construction of the sewers in the district added, although the property owners in each addition would not be required to contribute to the construction of sewers in the first district laid out, or in any of the former additions thereto. In the able brief for defendants in error several cases have been called to our attention, but none of them are based upon statutes the same or similar to the one here under consideration, and are therefore without much bearing upon this case. It does not alter the construction of this statute to suggest that the district sewer, built in the original district No. 1, has no sufficient outlet; and that the proposed new sewer will furnish such convenience, and that without it the existing sewer will in a great measure be rendered valueless, for the law furnishes a remedy for this condition. An outlet to a sewer is an essential part of it; and in order to secure such outlet the sewer may be extended beyond the district or even outside of the municipal corporation; and section 986 authorizes the city to prescribe by ordinance for the connection of such sewers with the public sewer, or with other district sewers, or with the natural course of drainage; and if in the instant case an outlet for the sewer constructed in the original district cannot be obtained without an extension thereof beyond

the borders of the district, although that question is not here involved, we doubt not that the power resides within city councils to authorize the extension of said sewer to an outlet at the expense of the property owners in the district, for the power of the city council is not limited by said section to the construction of one sewer in a district, but may construct such a number as the majority of the property holders residing therein shall petition therefor, and may enlarge and extend those already constructed. Section 986, *supra.*

The judgment of the trial court is reversed and the cause remanded, with direction to enter judgment as prayed for by plaintiffs.

All the Justices concur.